1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DEANNE L. LEE,                                No.  2:14-cv-1560 AC

12                 Plaintiff,

13        v.                                       ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner Of Social Security,
15
                   Defendant.
16

17

18          Plaintiff seeks judicial review, for the second time, of a final decision of the

19   Commissioner of Social Security ("Commissioner") terminating Disability Insurance Benefits

20   ("DIB") that were previously granted to her under Title II of the Social Security Act ("the Act"),

21   42 U.S.C. §§ 401-34.[1]

22          For the reasons set forth below, the court will deny plaintiff's motion for summary

23   judgment, and grant the Commissioner's cross-motion for summary judgment.

24

25   _____
     [1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
     who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New
26   York, 476 U.S. 467, 470 (1986).  This case was referred to the undersigned by E.D. Cal. R.
     ("Local Rule") 302(c)(15); see also, 28 U.S.C. § 636(c).  Both parties voluntarily consented to
27   proceed before a United States Magistrate Judge, and have fully briefed the matter.  ECF Nos. 8,
     10, 20, 21; see 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73(a); Local Rule 301.

28

                                                  1

1

I.  PROCEDURAL BACKGROUND

2

A.  Initial Disability and Cessation Determinations

3
4
5
6
7
8

On August 2, 2001, the Commissioner found that plaintiff was disabled, effective March 17, 1998 – with diagnoses of "Affective (Mood) Disorders" and "Anxiety Related Disorders" – and awarded plaintiff benefits under the Act.  Administrative Record ("AR") at 44.[2]  On May 1, 2007, the Commissioner determined that plaintiff's disability had ceased two years earlier, on May 1, 2005.  AR 45 (Exh. 2A), 55-57 (Exh. 5B).  On August 28 & 29, 2007, that determination was upheld on reconsideration.  AR 46 (Exh. 3A), 77-89 (Exh. 10B).

9

B.  First ALJ Hearing and Decision

10
11
12
13
14
15
16
17
18
19
20

On February 8, 2008, ALJ Mark C. Ramsey conducted a hearing at which plaintiff represented herself.  AR 565-619 (transcript).  On June 28, 2008, the ALJ issued his first decision in this matter.  AR 435-45 (Exh. 4A).  The ALJ found that as of May 1, 2005, plaintiff had experienced "medical improvement" related to her ability to work.  AR 440-42 (Exh. 4A); see 20 C.F.R. § 404.1594(b)(1) (definition of "medical improvement").  The ALJ also found that despite the improvement, plaintiff's impairments were still "severe," although they did not meet or equal the severity level of the Listing of Impairments ("the Listings"), 20 C.F.R. Part 404, Subpart P, Appx. 1.[3]  AR 441-42.  The ALJ further found that despite plaintiff's impairments, plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels," but that she was limited to "simple unskilled work" because of her non-exertional limitations.  AR 442-44.

21
22
23
24

Using the Medical-Vocational Guidelines ("the Grids"), 20 C.F.R. Part 404, Subpart P, Appx. 2, the ALJ determined that, although plaintiff could not perform past relevant work, she could perform a significant number of jobs in the national economy.  AR 444-45.  He further found that plaintiff's "mild" non-exertional restrictions "do not significantly erode the job base at

25
26
27
28

[2]  The Commissioner lodged the two-volume Administrative Record (AR 1-1,345), in paper form only, on October 16, 2014.  ECF No. 10.

[3]  As discussed below, if the ALJ had found that plaintiff's impairments met or equaled the severity level of the Listings, he would been required to find that plaintiff's disability continued, with no further inquiry needed.  See 20 C.F.R. § 404.1594(f)(2) (sequential evaluation).

1    all exertional levels," and that her disability had therefore ended on May 1, 2005.  AR 444-45.

2    After plaintiff filed an appeal to the Appeals Council (deemed to be untimely), the matter was

3    returned to the ALJ for him to determine whether the case should be re-opened to consider the

4    additional evidence that plaintiff had submitted with the appeal.  AR 450-53 (Exh. 5A).

5            C.  Second ALJ Hearing and Decision

6            After granting the motion to re-open the matter, the ALJ held a second hearing on

7    November 2, 2009.  AR 620-52 (transcript).  On December 11, 2009, the ALJ issued his second

8    decision in this matter.  AR 14-25 (Exh 6A).  The ALJ again found that as of May 1, 2005,

9    plaintiff had experienced "medical improvement" related to her ability to work.  AR 20-22.  The

10   ALJ again found that despite the improvement, plaintiff's impairments were still "severe,"

11   although he found they did not meet or equal the severity level of the Listings.  AR 22.

12           The ALJ further found that despite plaintiff's impairments, plaintiff had the residual

13   functional capacity to perform "a full range of work at all exertional levels," but was limited to

14   "simple repetitive tasks i.e. unskilled work," because of her non-exertional limitations.  AR 23.

15   Using the Grids, the ALJ determined that, although plaintiff could not perform past relevant

16   work, she could perform a significant number of jobs in the national economy.  AR 23-24.  He

17   further found that plaintiff's "mild to moderate" non-exertional restrictions "do not significantly

18   erode the job base at all exertional levels," and that her disability had therefore ended on May 1,

19   2005.  AR 24.

20           D.  U.S. District Court Decision

21           After the Appeals Council denied review on September 1, 2010, AR 9-12 (Exh. 19B),

22   plaintiff appealed the decision to this court on November 22, 2010.  ECF No. 1; see Lee v.

23   Astrue, 2:10-cv-3162 KJN (E.D. Cal.).  This court found that the ALJ erred in finding that

24   plaintiff had experienced "medical improvement."  The court held that the error lay in the ALJ's

25   failure to consider the medical evidence which led to the August 2, 2001 finding of disability, and

26   by failing to compare that evidence with the medical evidence of plaintiff's condition after that

27   decision.  AR 671-82 (Exh. 8A).  The court remanded the matter to the Commissioner for further

28   proceedings.  AR 681-82.

1          E. Third ALJ Hearing and Final Decision

2          On July 23, 2013, the ALJ conducted a third hearing, AR 620-52 (transcript).  On March

3    14, 2014, the ALJ issued his third decision in this matter.  AR 656-70.  After reviewing the

4    medical evidence used to reach the initial disability decision, and the medical evidence of

5    plaintiff's condition after that decision, the ALJ again found that as of May 1, 2005, plaintiff had

6    experienced medical improvement related to her ability to work.  AR 661-62.  However, the ALJ

7    also found that plaintiff had developed additional, physical impairments.  AR 662-64.  The ALJ

8    found that plaintiff's new impairments were "severe" (as were her continuing impairments,

9    despite the improvement), but that they did not meet or equal the severity level of the Listings.

10   AR 662-64.

11         The ALJ further found that despite plaintiff's impairments, plaintiff had the residual

12   functional capacity to perform "light work," but was limited to "simple unskilled work without

13   frequent public contact" because of her non-exertional limitations.  AR 664-68.  Using the Grids

14   and the testimony of the vocational expert given at the third hearing, the ALJ determined that,

15   although plaintiff could not perform past relevant work, she could perform a significant number

16   of jobs in the national economy, even with the erosion of the occupational base caused by her

17   limitations, and that her disability had therefore ended on May 1, 2005.  AR 669-70.

18         That decision is the final decision of the Commissioner, notwithstanding the absence of a

19   further review, or denial of review, by the Appeals Council.  20 C.F.R. § 404.984(d) ("[i]f no

20   exceptions are filed and the Appeals Council does not assume jurisdiction of your case, the

21   decision of the administrative law judge becomes the final decision of the Commissioner after

22   remand").[4]  Plaintiff filed this action on July 1, 2014.  ECF No. 1; see 42 U.S.C. § 405(g).

23   ─────────────────────

24   [4]  Once the ALJ issues a decision after remand from the district court, the plaintiff may, within 30
     days of the ALJ's decision, file exceptions with the Appeals Council.  20 C.F.R. § 404.984(b)(1).
25   Even if the plaintiff does not file exceptions, the Appeals Council may, within 60 days of the
     ALJ's decision, take jurisdiction of the case sua sponte.  Id. § 404.984(c).  It does not appear from
26   the record that plaintiff filed any exceptions to the decision of the ALJ, or that the Appeals
     Council took jurisdiction of the case within 60 days.  Consequently, the ALJ's decision became
27   the final decision of the Commissioner 60 days after it was issued.  20 C.F.R. § 404.984(d); see
     Aguilar v. Colvin, 2014 WL 4449931 at *1, 2014 U.S. Dist. LEXIS 126860 at [3] (W.D.
28   (continued…)

1          II.  LEGAL STANDARDS

2          Social security claimants have the initial burden of proving disability.  Bowen v. Yuckert,

3    482 U.S. 137, 146 n.5 (1987).  "Once a claimant has been found to be disabled, however, a

4    presumption of continuing disability arises in her favor."  Bellamy v. Secretary of Health and

5    Human Services, 755 F.2d 1380, 1381 (9th Cir. 1985) (citing Murray v. Heckler, 722 F.2d 499,

6    500 (9th Cir. 1983)).  Balancing this presumption of continued disability however, are provisions

7    of the Act and its implementing regulations that are designed "to encourage individuals who have

8    previously suffered from a disability to return to substantial gainful employment when their

9    medical condition improves sufficiently to allow them to do so."  Flaten v. Secretary of Health &

10   Human Services, 44 F.3d 1453, 1458 (9th Cir. 1995).

11         Accordingly, a claimant who has been awarded disability benefits is required to undergo

12   periodic disability reviews, "to determine whether a period of disability has ended."  Flaten, 44

13   F.3d at 1460; Schweiker v. Chilicky, 487 U.S. 412, 415 (1988) (most disability determinations

14   must be reviewed at least once every three years); see 42 U.S.C. § 421(i)(1) (cases must be

15   reviewed for continuing eligibility "at least once every three years"); 20 C.F.R. § 404.1594 (rule

16   governing termination of benefits).  To determine whether a claimant continues to be disabled for

17   purposes of receiving DIB benefits, the Commissioner engages in an eight-step sequential

18   evaluation process:

19              (1) Are you engaging in substantial gainful activity?  If you are
20              (and any applicable trial work period has been completed), we will
                find disability to have ended (see paragraph (d)(5) of this section).

21              (2) If you are not, do you have an impairment or combination of
22              impairments which meets or equals the severity of an impairment
                listed in appendix 1 of this subpart?  If you do, your disability will
23              be found to continue.

24              (3) If you do not, has there been medical improvement as defined in
                paragraph (b)(1) of this section?   If there has been medical
25              improvement as shown by a decrease in medical severity, see
                step (4). If there has been no decrease in medical severity, there has

26   _____

27   Wash. 2014) ("Plaintiff did not file written exceptions with the Appeals Council, and, it does not
     appear from the record that the Appeals Council assumed jurisdiction of the case.  The ALJ's
     decision therefore became defendant's final decision after sixty days.") (citations omitted).

28

5

been no medical improvement. (See step (5).)

(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section; i.e., whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination.  If medical improvement is not related to your ability to do work, see step (5).  If medical improvement is related to your ability to do work, see step (6).

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the exceptions in paragraphs (d) and (e) of this section apply.  If none of them apply, your disability will be found to continue.  If one of the first group of exceptions to medical improvement applies, see step (6).  If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended.  The second group of exceptions to medical improvement may be considered at any point in this process.

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521).  This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function.  If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7).  When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature.  If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560.  That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past.  If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider whether you can do other work given the residual functional capacity assessment made under paragraph (f)(7) of this section and your age, education, and past work experience (see paragraph (f)(9) of this section for an exception to this rule). If you can, we will find that your disability has ended. If you cannot, we will find that your disability continues.

1  20 C.F.R. § 404.1594(f).[5]

2  In this evaluation process, the Commissioner has the "burden of producing evidence

3  sufficient to rebut [the] presumption of continuing disability."  Bellamy, 755 F.2d at 1381.

4  Indeed, the burden of *production* remains with the Commissioner throughout the sequential

5  evaluation process.[6]  Specifically, the Commissioner can find that disability has ceased:

6  
7  only if such finding is supported by – (1) substantial evidence
which demonstrates that – (A) there has been medical improvement
in the individual's impairment or combination of impairments (other
than medical improvement which is not related to the individual's
8  ability to work), and (B) the individual is now able to engage in
substantial gainful activity.
9  

10  42 U.S.C. § 423(f); Murray, 722 F.2d at 500 ("[t]he Secretary . . . has the burden to come forward

11  with evidence of improvement"); see Carlson v. Shalala, 841 F. Supp. 1031, 1037 (D. Nev. 1993)

12  ("[i]f the Secretary finds medical improvement related to the claimant's ability to do work, the

13  burden shifts to the Secretary to further show that the claimant is currently able to engage in

14  substantial gainful activity before the Secretary can find that the claimant is no longer disabled").

15  However, a reviewing court will not set aside a decision to terminate benefits unless the

16  determination is based on legal error or is not supported by substantial evidence in the record as a

17  whole.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

18  ## V.  THE ALJ's DECISION

19  The ALJ's preliminary determinations were these:

20  **1. The most recent favorable medical decision finding that the
claimant was disabled is the determination dated August 2,
21  2001.  This is known as the "comparison point decision" or
CPD.**

22  
23  **2. At the time of the CPD, the claimant had the following
medically determinable impairments: panic disorder,**

24  

25  [5]  See also, 20 CFR § 416.994(b)(5) (similar, but not identical, sequential evaluation applicable to terminations under Title XVI of the Social Security Act, 42 U.S.C.A. § 1382c(a)(4)(A)).

26  [6]  However, the ultimate burden of proving disability remains with plaintiff "even after an initial determination of disability."  Iida v. Heckler, 705 F.2d 363, 365 (9th Cir. 1983); contra, Griego v.

27  Sullivan, 940 F.2d 942, 944 (5th Cir. 1991) ("the ultimate burden of proof lies with the Secretary in termination proceedings") (per curiam).

28

> posttraumatic stress disorder, and major depressive disorder with anxiety.   The impairments were found to meet section 12.06 of 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).
>
> The State agency psychiatric consultant found that the claimant's anxiety disorder met listing 12.06 due to the presence of recurrent severe panic attacks and recurrent intrusive recollections of a traumatic experience (Exh. 4F).

AR 658.[7]

Without objection from plaintiff, the ALJ found at Step One, that plaintiff had not engaged in substantial gainful activity (for which the trial period had ended) since August 2, 2001.  The ALJ went on to find the following, without objection from plaintiff:

> **[Step Two, Part 1]  The medical evidence establishes that, since May 1, 2005, the claimant had the following medically determinable impairments: major depression, alcohol dependence, anxiety disorder, panic disorder without agoraphobia, posttraumatic stress disorder, and attention deficit disorder, degenerative disc disease and spondylosis.**
>
> **Since May 1, 2005, the impairments that were present at the time of the CPD did not meet or equal[] the severity of an impairment listed in 20 CFR Part 404, subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526). . . .**
>
> Currently . . . evidence supports a finding of a mild limitation in this area [activities of daily living], . . . mild limitation in social functioning, . . . moderate limitations in concentration, persistence or pace, . . . [and only] one episode of decompensation [that is, not "repeated"].[8]
>
> **[Step 3]  Medical improvement occurred as of May 1, 2005 (20 CFR 404.15947(b)(1)).**
>
> **[Step 4]  The medical improvement is related to the ability to work because, as of May 1, 2005, the claimant's CPD impairment[s] no longer met or medically equally equaled the same listing(s) that was met at the time of the CPD (20 CFR 404.1594(c)(3)(i)) [accordingly Step 5 is not considered].**

---

[7]  The consultant also found that plaintiff had "marked" difficulties in maintaining social functioning  and "marked" difficulties in maintaining concentration, persistence, or pace.  See AR 191 (Exh. 4F).

[8]  The ALJ also found that plaintiff did not meet the severity criteria of the "C" series of the Listings.

8

> **[Step 6] As of May 1, 2005, the claimant continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)). . . .**
>
> An agreed medical evaluation conducted by Mark Shelub, MD revealed that the claimant was found to have reached maximal medical improvement with diagnoses of cervical spine strain with multilevel disc herniation and degenerative disease, left upper extremity radiculitis/radiculopathy, lumbar spine strain, and left knee contusion (Ex. 23F).
>
> The above impairments are "severe" within the meaning of the Regulations because they cause more than minimal functional limitations and interfere with the claimant's ability to do basic work activities.
>
> **[Step 2, Part 2] Based on the additional physical impairments present as of May 1, 2005, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)**

AR 658-64.

The ALJ then opined on plaintiff's residual functional capacity ("RFC"), which is the most plaintiff can do despite her limitations.  AR 664-68; <u>see</u> 20 CFR § 404.1545 ("[y]our residual functional capacity is the most you can still do despite your limitations").  The ALJ determined as follows:

> **[Step 7] Based on the impairments present as of May 1, 2005, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is limited to simple unskilled work without frequent public contact.**

AR 664.

The ALJ concluded that "[t]he claimant's disability under sections 216(i) and 223(f) of the Social Security Act ended as of may 1, 2005 and the claimant has not become disabled again since that date."  AR 670.

## VI.  ANALYSIS

Plaintiff's sole argument on appeal is that the ALJ erred in rejecting plaintiff's testimony in that he "improperly assessed her subjective symptom testimony in assessing the residual function capacity."  Plaintiff's Motion (ECF No. 20) at 8.  However, plaintiff does not identify a

9

1  single piece of testimony that was improperly rejected, nor does she even identify the area of

2  testimony that was improperly rejected.[9]  The ALJ did address plaintiff's testimony about

3  limitations caused by her mental impairments, and those caused by her physical impairments.

4  AR 665-67.  Aside from a sweeping reference to the entirety of the ALJ's discussion of her

5  testimony, plaintiff does not indicate which specific testimony, or area of testimony, she believes

6  was improperly rejected.  The court is left only with plaintiff's mini-treatise on the state of the

7  law concerning the rejection of testimony, unmoored from any particular complaint about how

8  the law was applied, or not applied, to the facts of this case.  The court will address the legal

9  issues raised by plaintiff.

10         A.  Testimony

11         Plaintiff asserts that the ALJ rejected plaintiff's testimony because it was "inconsistent

12  with what the ALJ believes it should be," and argues that this is the incorrect standard.  Plaintiff's

13  Motion at 10.  Plaintiff argues, correctly, that the ALJ must consider plaintiff's subjective

14  symptoms, and also cites the correct legal standard for rejecting plaintiff's testimony.  See

15  Plaintiff's Motion at 9-10.[10]

16         However, plaintiff does not identify where in the decision the ALJ failed to follow the

17  correct standards.  Plaintiff offers no citation to the ALJ's decision, to the record, or to anything

18  else that would identify the basis for her assertion.[11]  The court's review of the decision finds

19  nothing to indicate that the ALJ rejected plaintiff's testimony on the grounds it was not "what the

20  ALJ believes it should be."  Neither did the ALJ fail to provide sufficiently specific reasons for

21
22  [9]  This is no small omission.  There were three hearings in this case, spanning 135 pages of
   transcripts, and plaintiff testified at all three.  See AR 565-619 (February 8, 2008 transcript),
   620-52 (November 2, 2009 transcript), 1296-1345 (July 23, 2013 transcript).
23  [10]  Citing  20 C.F.R. § 404.1529(a) ("we consider all your symptoms, including pain, and the
24  extent to which your symptoms can reasonably be accepted as consistent with the objective
   medical evidence and other evidence"), Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996)
25  ("[i]n determining residual functional capacity, the ALJ must consider subjective symptoms such
   as fatigue and pain"), and Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)
26  (ALJ's decision "must be sufficiently specific to allow a reviewing court to conclude the
   adjudicator rejected the claimant's testimony on permissible grounds").
27  [11]  Plaintiff's motion cites to the entirety of the ALJ's discussion at AR 665-668, ECF No. 20 at
   10, 11, without identifying any specific errors.
28

1   rejecting plaintiff's testimony.

2          To the contrary, the ALJ states that he rejected plaintiff's testimony regarding her mental

3   symptoms because they "are inconsistent with treatment notes showing that the claimant's mental

4   conditions are well controlled."  AR 665.  The ALJ then identifies the specific treatment notes

5   from which he drew this conclusion.  AR 666 & 667 (citing Exhibits 5F, 7F, 8F, 9F, 11F, 14F,

6   16F, 18F and 22F).  Plaintiff does not challenge the ALJ's statement, does not mention a single

7   one of these exhibits, does not argue that the treatment notes fail to support the statement, and

8   does not argue that there is a lack of substantial evidence to support the ALJ's assessment.

9   Indeed, the court cannot tell from plaintiff's brief if she even disagrees with the ALJ's assessment

10  of her testimony as it relates to her mental impairments.

11         Similarly, the ALJ indicates that he rejected plaintiff's testimony regarding her "physical

12  condition," because the medical evidence showed that plaintiff's pain was well controlled by

13  injections, including a "reported '100% reduction in reference pain'" in August 2010, that

14  plaintiff had only occasional tenderness, that she was able to work for six months after August 2,

15  2001 (although she had to stop for reasons other than her impairments),  and that she did not seek

16  the treatment one would expect of a person with her alleged symptoms.  AR 666-68.  Once again,

17  plaintiff does not challenge these statements, nor the statement that the medical evidence is

18  "inconsistent" with plaintiff's testimony, does not assert that the medical evidence the ALJ

19  identified fails to support the statements, does not identify any medical evidence that is contrary

20  to the evidence cited by the ALJ, and does not assert that the statements are not supported by

21  substantial evidence.

22         In short, there is no basis in the record for plaintiff's argument, as the ALJ did not simply

23  reject plaintiff's testimony because it was not what he thought it should be.

24         B.  Conclusory or boilerplate statements

25         Plaintiff asserts that the ALJ relies on "oft rejected boilerplate language," and argues that

26  this is error because it "yields no clue to what weight the trier of fact gave the testimony."

27  Plaintiff's Motion at 10-11.  However, the only boilerplate language plaintiff makes reference to

28  is the words "not credible."  Id.  Whatever problems there may be in the use of boilerplate

1   language, they are not evident here.

2          The Ninth Circuit has harshly criticized the use of boilerplate as a substitute for discussing

3   the testimony or the evidence:

4              The ALJ did not, however, "specifically identify the testimony" he
               found not credible. [Holohan v. Massanari, 246 F.3d 1195, 1208
5              (9th Cir. 2001)].  Rather, he made only the single general statement
               that "the claimant's statements concerning the intensity, persistence
6              and limiting effects of these symptoms are not credible to the extent
               they are inconsistent with the above residual functional capacity
7              assessment."  ALJs routinely include this statement in their written
               findings as an introduction to the ALJ's credibility determination.
8              See, e.g., Kamann v. Colvin, 721 F.3d 945, 949-51 (8th Cir. 2013);
               Bjornson v. Astrue, 671 F.3d 640, 645-47 (7th Cir. 2012).  After
9              making this boilerplate statement, the ALJs typically identify what
               parts of the claimant's testimony were not credible and why.  See,
10             e.g., Moore v. Colvin, 743 F.3d 1118, 1122 (7th Cir. 2014).

11             But here, the ALJ stopped after this introductory remark.  This was
               error and falls short of meeting the ALJ's responsibility to provide
12             "a discussion of the evidence" and "the reason or reasons upon
               which" his adverse determination is based.  42 U.S.C. § 405(b)(1).
13

14   Treichler,  775 F.3d at 1102-03.  This is not what the ALJ did here, however.  The ALJ first laid

15   out plaintiff's specific symptom testimony regarding her mental impairments and her physical

16   impairments.  AR 665.  He then set forth the medical evidence he felt was "inconsistent" with that

17   testimony.  AR 666-68.

18          Plaintiff's argument here has no support in the record, as the ALJ did not rely on

19   boilerplate language to make his decision.

20          C.  Pain symptoms and objective medical evidence

21          Plaintiff asserts that the ALJ rejected plaintiff's testimony as not credible "because it lacks

22   support in the objective medical evidence," and that this was error.  Plaintiff's Motion at 11.

23   Once again, plaintiff is correct on the law, but fails to identify where or how the ALJ failed to

24   follow the correct standard.

25          As plaintiff argues, the ALJ may not reject symptom testimony – including pain testimony

26   – simply because the extent of the pain is not supported by the objective medical evidence.

27   Bunnell, 947 F.2d at 345 ("once the claimant produces objective medical evidence of an

28   underlying impairment, an adjudicator may not reject a claimant's subjective complaints based

12

solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain").

Plaintiff does not point to any place in the decision, however, where the ALJ rejected plaintiff's

testimony "solely" on the lack of objective medical evidence. Indeed, plaintiff does not identify

any specific portion of plaintiff's pain testimony that the ALJ rejected, for any reason.[12]

The court's own review of the decision shows that the ALJ did cite medical evidence that

fails to support plaintiff's testimony. See, e.g., AR 666 ("[a]side from occasional tenderness and

decreased range of motion of the neck at times, physical examinations reveal few objective

findings"). However, the ALJ does not rely on this lack of medical evidentiary support as the

sole reason for rejecting any of plaintiff's symptom testimony. Rather, the ALJ finds that her

testimony is *inconsistent* with other evidence.

For example, the ALJ relied upon plaintiff's report of "'100% reduction in reference

pain'" after she received injections for pain. See AR 666. As another example, the court

implicitly rejected plaintiff's testimony that she could only walk or stand for five minutes, and

could only sit for 40 or 45 minutes (AR 1332-33), along with the medical opinion of Dr. Mark

Shelub, because it is "inconsistent with treatment records showing a normal gait and normal

findings on lumbar spine MRI as discussed above." AR 668. The ALJ then identifies the

treatment records, along with plaintiff's own testimony, that he relied upon in reaching that

conclusion. See AR 668 (citing Exh 19F, and plaintiff's testimony that she could "shop in the

grocery store for 1 to 1 ½ hours"). Plaintiff does not challenge the conclusion, the underlying

treatment records, or the ALJ's interpretation of her testimony.[13]

---

[12]  In fact, plaintiff does not identify where in her testimony she even discusses pain, and the court can find no express reference in the testimony to pain. From plaintiff's testimony that she cannot stand or sit for prolonged periods, the court could possibly *infer* that it was because of pain. See AR 1332-34. However, it is possible that the inability arises from "numbness" or some other cause. See AR 1332 (can sit for 40 minutes before "everything goes numb" and plaintiff must "stand up and stretch"). The court notes that at the first hearing in this matter, on February 8, 2008, plaintiff testified that the numbness causes her to "drop things or fumble with things." AR 594 (Exh. 10E). At that hearing, plaintiff also expressly testified about her pain. AR 598-606. It is not clear if plaintiff means to include prior testimony in her claim that the ALJ improperly rejected her testimony.

[13]  The ALJ used plaintiff's ability to "shop for 1 ½ hours" as a basis for rejecting her testimony that she could not stand or walk for more than five minutes. This assessment of plaintiff's (continued…)

1   The record does not support plaintiff's argument that the ALJ rejected plaintiff's pain

2   testimony solely because of a lack of medical evidence.

3       D. Ability to do something does not equal ability to work

4       Plaintiff appears to assert that the ALJ rejected plaintiff's credibility regarding her

5   inability to work, by "pointing out that Deanne Lee can do some activities."  Plaintiff's Motion

6   at 15.  Once again, plaintiff is correct on the legal point that plaintiff's ability to do some things

7   does not necessarily mean that she can engage in substantial gainful activity.  See id., citing,

8   among others, Lester v. Chater,  81 F.3d 821, 833 (9th Cir. 1995) ("[o]ccasional symptom-free

9   periods – and even the sporadic ability to work – are not inconsistent with disability").[14]

10  However, plaintiff does not identify any place in the decision where the ALJ even mentioned

11  plaintiff's ability to engage in routine daily activities,[15] much less based his decision on it.

12      Nothing in the record supports plaintiff's assertion that such an error occurred here.

13                          VII.  CONCLUSION

14      Plaintiff has correctly stated the governing standards in several areas that often arise in

15  social security cases.  However, she has not identified any legal error committed by the ALJ, nor

16  any legal standard that the ALJ violated or failed to follow.  Also, plaintiff does not even assert

17  that there is a lack of substantial evidence to support the ALJ's conclusion, nor does she identify

18  _____

19  shopping habits is extremely questionable, since (1) the ALJ came up with the 1 ½ hour figure
    after plaintiff testified she did not know how long she shopped, and only agreed with it after
20  being pushed to do so by the ALJ, and (2) even after agreeing, plaintiff qualified this alleged
    ability by stating that she could only shop with "a cart to use for walking," and that she needed it
21  for support. AR 1314.  However, plaintiff does not raise this as an issue, and the court therefore
    will not consider it.  See Greger v. Barnhart, 464 F.3d 968, 973-74 (9th Cir. 2006) (Social
22  Security plaintiff waives issues not raised).

23  [14]  Plaintiff also correctly cites Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989) ("a
    claimant need not vegetate in a dark room or be a total "basket case" to be found unable to engage
24  in substantial gainful activity"), Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[t]his
    court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily
25  activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any
    way detract from her credibility as to her overall disability"), and several other cases.
26  [15]  As noted above, the ALJ does note that plaintiff can shop in the grocery store for 1 to 1 ½
    hours.  AR 668.  However, this observation was made in the context of assessing plaintiff's
27  allegation that she could not walk or stand for more than 5 minutes, apparently because of pain.
    Id.  The ALJ does not state or imply that because plaintiff can shop, she can work.
28

any finding in the ALJ's decision that is not supported by substantial evidence.

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 20), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 21), is GRANTED;

3. The Clerk of the Court shall enter judgment for defendant, and close this case.

DATED: September 17, 2015

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

15